UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

BARBARA SILBERMAN,

                Plaintiff,

           -against-

ATLANTIC DIALYSIS MANAGEMENT
SERVICES, LLC,

                Defendant.

------------------------------------------------

17cv7019

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Defendant Atlantic Dialysis Management Services, LLC ("Atlantic") moves to dismiss this Age Discrimination in Employment Act ("ADEA"), New York State Human Rights Law ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and constructive discharge action for failure to state a claim and as time-barred. For the following reasons, Defendant's motion is granted.

## BACKGROUND

        The allegations of the Second Amended Complaint are accepted as true on this motion. Barbara Silberman became a full-time Registered Dietician at Atlantic in January 2008. (Second Am. Compl., ECF No. 29 ("SAC") ¶ 11.) Silberman does not specify whether she signed an employment agreement or contract. Atlantic consistently evaluated her work performance as "outstanding" and often sent her to train other employees at four of Atlantic's additional dialysis clinics. (SAC ¶ 12.)

        In February 2014, Silberman was diagnosed with leukemia and began chemotherapy. (SAC ¶ 13.) She informed Atlantic of her condition and obtained leave under the

Family Medical Leave Act. (SAC ¶ 14.) Silberman then spent six to seven weeks in the hospital. (SAC ¶ 14.)

While Silberman was in the hospital, Sonia Santos—a work acquaintance from Atlantic and a friend of Atlantic's Vice President, Mayette Casco—visited her by "surprise." (SAC ¶¶ 11, 15.) During that visit, Silberman claims Santos reminded her that Santos was a "good friend" of Casco's and "harassed" Silberman "to give up her job immediately." (SAC ¶ 15.) Silberman further alleges that Santos "repeatedly urged [her] to resign." (SAC ¶ 15.) Silberman does not allege that Santos supervised her.

By April 2014, Silberman was cleared to return to work. (SAC ¶ 16.) But when she informed her supervisor, Ron Pascual, of the news, Pascual told Silberman that she had been replaced by another Atlantic employee. (SAC ¶ 16.) Accordingly, Silberman called Elaine Owens—an employee in Atlantic's personnel department—who told Silberman to return to work. (SAC ¶ 17.) Thereafter, Silberman returned to Atlantic. (SAC ¶ 17.) A few weeks into her return, Silberman confronted Pascual about his comments made over the phone, but Pascual denied having made them and stated that he hired "Maria," who worked at another Atlantic clinic. (SAC ¶ 17.) Silberman does not indicate how this event was age related.

In addition, and close in time to when she returned to work, Silberman alleges that a co-owner of Atlantic—Dr. Bhatt—held a Quality Assurance meeting, which Silberman attended. (SAC ¶ 18.) During that meeting, Dr. Bhatt stated, in sum and substance, "As our employees are getting older and sicker, it is something that Atlantic has to think about, as we are self-insured for health insurance. . . . [S]o far we have been okay [and] [we] put aside $300,000 monthly for that purpose." (SAC ¶ 18.) Dr. Bhatt "never called out [Silberman] directly." (SAC ¶ 18.) Silberman does not specify how many people attended that meeting.

Over the next year, Silberman claims to have "fully reintegrated and continued her very heavy caseload." (SAC ¶ 19.) However, Silberman alleges a "change in the way she was treated." (SAC ¶ 19.) Specifically, Silberman claims that Pascual "complained about nonexistent scheduling issues that he had with" her. (SAC ¶ 20.) Silberman does not explain what these scheduling issues entailed or specify the form in which these complaints were lodged, but claims that she "was always extremely flexible with her schedule" and agreed "to changes and moving her day around as Atlantic saw fit." (SAC ¶ 20.) Indeed, Silberman alleges that she worked over 1,250 hours per year and worked all 12 months of the year. (SAC ¶ 13.) She also alleges that she reached out to Pascual "numerous times to resolve any issues he thought existed," but Pascual never responded. (SAC ¶ 21.) And when Silberman approached Pascual in person to discuss any perceived scheduling issues, "he would laugh and say 'don't worry about it.'" (SAC ¶ 21.) Silberman does not indicate that any of these complaints were related to her age, or that these complaints had any negative effect on her job other than the one instance discussed below.

Silberman eventually complained to human resources about "the harassment and hostile work environment," but it is unclear what specifically Silberman told human resources. (SAC ¶ 23.) In spite of her complaints, Silberman alleges that Pascual commended her for doing outstanding work, and she claims that she "continued her exemplary work." (SAC ¶¶ 22, 24.) However, on May 21, 2015, Atlantic's Director of Human Resources—Simone Martine—emailed Silberman regarding scheduling issues. (SAC ¶ 25.) Specifically, Silberman alleges that Martine stated that it had "come to her attention" that Silberman failed to follow her schedule. (SAC ¶ 25.) As a result, Martine "threatened [Silberman] with termination." (SAC ¶ 25.) In addition, Silberman alleges that the same email indicated that human resources had

3

conducted an investigation into her allegations regarding Pascual and found that they could not be substantiated. (SAC ¶ 25.) Silberman alleges that whoever investigated her claim never spoke to her about the issues. (SAC ¶ 25.)

Thereafter, Silberman resigned from Atlantic, citing an "intolerable" work environment related to the conduct discussed above. (SAC ¶ 26.) She gave Atlantic four weeks' notice. (See Stiller Decl. in Supp. of Mot. to Dismiss SAC, ECF No. 36 ("Stiller Decl."), Ex. A; Mem. of Law in Opp. to Def.'s Mot. to Dismiss, ECF No. 37 ("Opp."), at 4.)

## DISCUSSION

I. Standard

Although certain employment discrimination cases are evaluated under the three-part burden-shifting analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Silberman need not establish a prima facie case at the motion to dismiss stage. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 508 (2002). Rather, her Second Amended Complaint must merely satisfy Federal Rule of Civil Procedure 8. See Swierkiewicz, 534 U.S. at 508.

On a motion to dismiss, a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and quotation marks omitted). Moreover, a claim must rest on "factual allegations sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As such, a pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fails to state a claim. Iqbal, 556 U.S. at 678 (citation omitted). In

deciding such a motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). However, "[w]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." DiFolco, 622 F.3d at 111 (quotation marks omitted).

II. ADEA Claims

A. Timeliness

As a threshold matter, Atlantic seeks to dismiss Silberman's ADEA claims as time-barred. Under the ADEA, plaintiffs must meet two timeliness requirements. See Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 23 (2d Cir. 1985). First, the "ADEA require[s] that a plaintiff file a charge with the Equal Employment Opportunity Commission ('EEOC') within 300 days of an alleged discriminatory act." Dickens v. Hudson Sheraton Corp., LLC, 167 F. Supp. 3d 499, 514 (S.D.N.Y. 2016). Any "acts that occurred more than 300 days before the filing are time-barred." Aka v. Jacob K. Javits Convention Ctr. of N.Y., 2011 WL 4549610, at *12 (S.D.N.Y. Sept. 30, 2011). Second, if an EEOC charge is timely filed and then dismissed by the EEOC, a plaintiff must file suit under the ADEA within 90 days of receiving a "right-to-sue letter" from the EEOC. See Dickens, 167 F. Supp. 3d at 514–15; 42 U.S.C.A. § 2000e-5. Silberman meets both requirements.

First, Silberman satisfies the 300-day rule—her June 4, 2015 resignation took place within 300 days of the filing of her EEOC charge. (See Stiller Decl. Ex. B (demonstrating that Silberman filed her EEOC charge on March 29, 2016).) Atlantic argues that because all other alleged harassment took place outside of the 300-day window, her claims are still time-

barred. Silberman counters that the continuing violation doctrine applies. But this argument is irrelevant because her ADEA claim is predicated on a constructive discharge. (See SAC ¶ 28; Opp. at 3.)

"Under the standard rule for limitations periods, the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns." Green v. Brennan, 136 S. Ct. 1769, 1777–78 (2016) (holding that starting the limitations clock before a plaintiff can actually sue would frustrate the purpose of Title VII); Flaherty v. Metromail Corp., 235 F.3d 133, 138 (2d Cir. 2000) ("We think that the date that [plaintiff's ADEA] claim accrued was the date when she gave definite notice of her intention to retire, and the rule should be the same in all cases of constructive discharge."). Silberman's resignation was within the limitations period, so her claim is timely.

Silberman also satisfies the 90-day requirement. The right-to-sue notice was mailed on June 15, 2017. (See Stiller Decl., Ex. C.) "Normally it is assumed that a mailed document is received three days after its mailing" and that the notice was mailed on the date shown on the notice. Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525–26 (2d Cir. 1996). Thus, Silberman is assumed to have received her right-to-sue notice on June 18, 2017. She commenced this action on September 14, 2017. (See Compl., ECF No. 1). That is within 90 days. Still, Atlantic argues that the filing date of the original complaint does not control because Silberman incorrectly named Atlantic in the original complaint and never actually served that complaint on Atlantic. Thus, Atlantic argues, the filing date of the amended complaint, which was served on it, controls—September 20, 2017. But Federal Rule of Civil Procedure 15 provides that an amendment to a pleading relates back to the date of the original pleading if (1) "the amendment changes the party or the naming of the party against whom a claim is asserted,"

(2) the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original pleading, and (3) within 90 days of the filing of the original pleading, the newly named party received notice of the action and knew or should have known that the action would have been brought against it but for a mistake concerning the party's proper identity. All three are satisfied here.

B. Merits

To state a claim under the ADEA, Silberman must allege "that: (1) [she] 'was within the protected age group'; (2) 'she was qualified for the position'; (3) 'she experienced adverse employment action'; and (4) 'such action occurred under circumstances giving rise to an inference of discrimination.'" Miller v. Dep't of Educ. of City of N.Y., 2018 WL 1468703, at *2 (S.D.N.Y. Mar. 23, 2018) (quoting Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010)). Atlantic does not dispute that Silberman was in the protected age group or that she was qualified for her position. It contends that Silberman fails to allege adverse employment action and an inference of discrimination.

i. Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "To be 'materially adverse' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Galabya, 202 F.3d at 640. Such a change includes "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Galabya, 202 F.3d at 640.

Here, Silberman claims the "adverse employment action" was that Atlantic's discriminatory conduct forced her to resign. "It is true that a genuine constructive discharge, whereby an employee's resignation is treated as if the employer had actually discharged the employee, constitutes an adverse employment action." Shapiro v. N.Y.C. Dep't of Educ., 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008) (quotation marks omitted); Stofsky v. Pawling Cent. Sch. Dist., 635 F. Supp. 2d 272, 299 (S.D.N.Y. 2009) (same). But Silberman fails to allege constructive discharge.

"[A] constructive discharge occurs when an employer 'deliberately makes an employee's working conditions so intolerable that the employee is forced into a[] voluntary resignation.'" Shapiro, 561 F. Supp. 2d at 424 (quoting Spence v. Md. Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993)). "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (quotation marks omitted). For instance, large pay cuts and the elimination of employment benefits can constitute intolerable conditions, see Kirsch v. Fleet St., Ltd., 148 F.3d 149, 161 (2d Cir. 1998), as well as "years of being denied promotion opportunities," Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004). "[C]onstructive discharge also requires deliberate action on the part of the employer"— specifically, the intent "to create intolerable workplace conditions." Whidbee, 223 F.3d at 74.

Silberman fails to allege, beyond the speculative level, that her working conditions "were so difficult or unpleasant that a reasonable person . . . would have felt compelled to resign." Whidbee, 223 F.3d at 73. The alleged "intolerable" working conditions consist of three isolated incidents (the hospital visit from Santos in which she urged Silberman to resign, Pascual's telling Silberman she had been replaced, and Dr. Bhatt's comment), Pascual's

8

repeated complaints about "scheduling issues," and a single threat of termination. Notably, and as discussed below, only one of these incidents related to Silberman's age.

These incidents do not constitute intolerable working conditions. Atlantic did not deny Silberman benefits or promotions and it never reduced her pay. Further, complaints based on similar—or even worse—facts have been dismissed by judges in this District. See Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., 2017 WL 1194686, at *1–4, *12 (S.D.N.Y. Mar. 30, 2017) (dismissing claim for constructive discharge under the ADEA, ADA, and Title VII where an employer falsely accused an employee of missing her shift; spoke to her about arriving late, despite not speaking to other late employees; treated employees of another race more favorably; and addressed the employee in an overly formal manner to highlight her more advanced age); Trachtenberg v. Dep't of Educ. of N.Y., 937 F. Supp. 2d 460, 468, 472 (S.D.N.Y. 2013) (finding plaintiff failed to plead constructive discharge under the ADEA where she alleged that her supervisor subjected her to "excessive scrutiny"; stared at her in an effort to intimidate her; gave her negative evaluations; moved her to a poorly ventilated, windowless office; and denied her training opportunities). Moreover, that Silberman gave four weeks' notice "undermines a claim of constructive discharge," because it indicates that the conditions were not intolerable. Russell v. Cty. of Rockland, 2017 WL 3189873, at *5 (S.D.N.Y. July 26, 2017); Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 447 (S.D.N.Y. 2009), aff'd in part, 663 F.3d 556 (2d Cir. 2011) (holding that "searching for another job while [the employee] remained employed" militates against a constructive discharge claim).

    ii.    Inference of Discrimination

Even if Silberman adequately alleged an adverse employment action, she fails to allege an inference of discriminatory intent. "It is well-settled that an inference of discriminatory

intent may be derived from a variety of circumstances, including, but not limited to: 'the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009) (quoting Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994)); Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015).

Not one of these factors is alleged here. The Second Amended Complaint is bereft of facts relating to Atlantic's treatment of other employees, hiring practices, or invidious comments regarding Silberman's protected group. In fact, only one incident in the entire Second Amended Complaint relates to age—Dr. Bhatt's comment: "As our employees are getting older and sicker, it is something that Atlantic has to think about, as we are self-insured for health insurance. . . . [S]o far we have been okay [and] [we] put aside $300,000 monthly for that purpose." (SAC ¶ 18.) But that comment included a disclaimer that Atlantic was "okay," and Silberman admits that Dr. Bhatt "never called [her] out . . . directly." (SAC ¶ 18.) Although Silberman alleges various incidents she found unpleasant—such as Pascual's scheduling issues and Santos' visit—she does not allege that she received this treatment because of her age beyond the ipse dixit of her attorney and a "formulaic recitation of the elements of a cause of action." Iqbal, 556 U.S. at 678. Therefore, she fails to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

III. Constructive Discharge

Silberman's "constructive discharge" claim is not tied to a statute, so it is interpreted as a common law claim. See DeLuca v. SmithKline Beecham Corp., 2007 WL 5411656, at *3 (S.D.N.Y. Feb. 20, 2007) (holding that a cause of action titled "Constructive Discharge" rather than "Constructive Discharge Under Administrative Code § XXX" was a "common law cause of action"). Such an interpretation is buttressed by Silberman's contention that the adverse employment action in her statutory claims was constructive discharge.

As a threshold issue, and as discussed below, this Court declines to exercise supplemental jurisdiction over Silberman's state-law claims. But regardless, it "is undeniably true" that "New York does not recognize a common law cause of action for constructive discharge" for at-will employees. DeLuca, 2007 WL 541656, at *2–3; see Spivak v. J. Walter Thompson U.S.A., Inc., 685 N.Y.S.2d 247, 247 (N.Y. App. Div. 1999) (holding that a claim for constructive discharge brought by an at-will employee was "properly deemed untenable by the motion court"). And Silberman fails to allege that she was not employed at will. See Nicholas v. Wyndham Hotel Grp., LLC, 2015 WL 1011724, at *1 (S.D.N.Y. Mar. 9, 2015) (granting motion to dismiss where complaint failed to "overcome New York's presumption of at-will employment"). As such, her claim for constructive discharge is dismissed. And, even assuming that she was not employed at will, her constructive discharge claim fails on the merits for the same reasons as her ADEA claims.

IV. NYSHRL/NYCHRL

Silberman brings state- and city-law claims alleging discrimination based on her illness. (SAC ¶ 32.) However, a court may decline to exercise supplemental jurisdiction where it has dismissed all other claims over which it had original jurisdiction. 28 U.S.C. §1367(c)(3).

This Court declines to exercise supplement jurisdiction here, especially where Atlantic contends that illness is not a protected category under New York law. That "is a question best left to the courts of the State of New York." Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. The Clerk of Court is directed to terminate all pending motions and to mark this case as closed.

Dated: September 11, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.